IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                Case No. 3:22-cr-30054-NJR

DUAN M. BROWN,

      Defendant.

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on two Motions for *Franks* Hearings (Docs. 81, 82) filed by Defendant Duan M. Brown, who is proceeding *pro se*.

## BACKGROUND

Brown was indicted by a federal grand jury in the Southern District of Illinois on May 17, 2022. (Doc. 1). He was originally charged with Possession of A Firearm by an Unlawful User of Controlled Substances in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The Indictment alleged that on February 17, 2022, in Clinton County, Illinois, Brown, an unlawful user of a controlled substance, knowing he was an unlawful user of a controlled substance, did knowingly and intentionally possess a firearm. (*Id.*).

On July 28, 2022, the Government filed a superseding indictment with the following four counts:

1. Bank fraud (Count I);

2. Distribution of Controlled Substance: Fentanyl (May 27, 2021) (Count II);

3.   Distribution of Controlled Substance: Fentanyl (June 10, 2021) (Count III); and

4.   Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Count IV).

(Doc. 57). The superseding indictment alleges that the conduct took place in Marion County, Illinois. Brown has been on bond without any issues; his pretrial release conditions consist of location monitoring and home detention. (Docs. 17, 18).

INVESTIGATION

On May 13, 2021, Detective Blake Dukes of the City of Centralia Police Department, Lieutenant Jamie James, and Detective Shawn Richards conducted their first controlled buy of heroin from Brown. A confidential source, CS 17-405, was under constant surveillance while purchasing approximately 0.5 grams of suspected heroin. (Doc. 91-1, p. 1). On May 20, 2021, Detective Shawn Richards and Lieutenant Jamie James conducted a second controlled buy of heroin. Again, CS 17-405 was under constant surveillance while purchasing approximately 0.5 grams of field-tested positive heroin. (*Id*.). On May 27, 2021, law enforcement conducted a third controlled buy of heroin using CS 17-405. (Doc. 82-2, p. 1). Finally, on June 10, 2021, law enforcement conducted a fourth controlled buy of heroin using CS 17-405. (*Id*.).

On June 10, 2021, Detective Dukes filed a complaint for search warrant for the residence at 875 Martin Luther King Drive in Centralia, Illinois. (Doc. 81-2). Detective Dukes noted that the items sought to be seized as constituting evidence of the commission of a crime, delivery of a controlled substance, included "[a]ny illegal narcotics, scales, packaging material, paraphernalia, currency from proceeds of illegal narcotics sales." (*Id*.). The statement of probable cause included the following:

Starting on 5/13/2021, again on 5/20/2021, and again on 5/27/2021 three controlled buys were conducted on Duan M. Brown at 875 Martin Luther King Dr, using C/S 17-405. In each of the controlled buys we purchased approximately 0.5 grams of heroin for $100.00 (after the buy on 05/20/21 Lt. James weighed the heroin and field tested the heroin. The field test was positive). On each one of the controlled buys no contact was made with Brown prior to the purchase. The C/S first made contact with Brown when knocking on the door asking for heroin. On each controlled buy Brown was able to produce the heroin. On 6/10/21 I was able to conduct another controlled buy on Duan M. Brown at 875 Martin Luther King Dr. Again we were able to purchase 0.5 grams of heroin (this buy was not field tested due to the C/S advising that the C/S felt the heroin could possibly be fentanyl and the C/S was even concerned for me to touch the bag, and asked that the C/S place the baggy in the evidence bag for me). At the end of the purchase C/S 17-405 asked Brown if he would be around later (the C/S's way of asking Brown if he had more heroin the C/S could come buy). Brown responded by saying he would be gone for a while but would be back in a few hours (indicating to the C/S that the C/S could return later to purchase more heroin).

(*Id*.). The search warrant was issued on June 10, 2021.[1]

The next day, June 11, 2021, Detective Decker of the Marion County Sheriff's Department filed a complaint for search warrant for the same residence. (Doc. 82-2). Detective Decker noted that the items sought to be seized as constituting evidence of the commission a crime, unlawful possession of a firearm without a Firearm Owner's Identification ("FOID") Card, included "[a]ny and all firearms, ammunition, holsters, and or gun cases, gun cleaning kits and or any documents regarding the possession or purchase of firearms and or ammunition." (*Id*.). The statement of probable cause is nearly identical to Detective Dukes's statement, but also includes the following:

On today's date, while executing the search warrant for 875 Martin Luther King Dr, Centralia, Il that was granted yesterday by Judge Stedlin, law enforcement located a Taurus Millennium G2 9mm pistol in plain view

---

[1] The search warrant appears to be incorrectly dated May 10, 2021. (Doc. 81-1, p. 1).

sitting on a chair in the living room area of the residence. It is believed, based upon prior controlled buys conducted at 875 Martin Luther King Dr, Centralia IL that 875 Martin Luther King Dr, Centralia IL either the residence or temporary domicile of Brown. Records within the state of Illinois do not reflect that Brown has an Illinois FOID. Additionally, it is believed that Brown has prior felony convictions out of the state of Missouri, so that he is a convicted felon. The Marion County Sheriff's Department has assisted in the execution of the search warrant at 875 Martin Luther King Dr, Centralia IL granted yesterday at the request of the Centralia Police Department.

(*Id*.). The search warrant was issued on June 11, 2021. (Doc. 82-1).

Brown challenges the probable cause for issuance of the June 10th and June 11th search warrants, as well as the reliability, veracity, and basis of knowledge of the averments in the affidavits. The Government timely responded in opposition to the motions.

LEGAL STANDARD

"The Fourth Amendment's strong preference for the use of search warrants calls for probable cause determinations by a 'neutral and detached magistrate' as opposed to 'officer[s] engaged in the often competitive enterprise of ferreting out crime.'" *United States v. Clark*, 935 F.3d 558, 563 (7th Cir. 2019) (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). "The application for a warrant 'must provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). "The ability of the neutral and detached magistrate to determine probable cause depends on the accuracy of the information the police submit." *Id*. "'[A] search warrant is not valid if the police obtain it by deliberately or recklessly presenting false, material information,' or by omitting material information from the

affidavit provided to the issuing judge." *Id*. (quoting *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013)).

"To invalidate a warrant on this basis, a defendant at a so-called *Franks* hearing must prove by a preponderance of the evidence either falsity or recklessness, as well as materiality." *Id*. (citing *McMurtrey*, 704 F.3d at 509). To obtain a *Franks* hearing, "[a] defendant must only make a substantial preliminary showing (1) that the warrant application contained a material falsity or omission that would alter the issuing judge's probable cause determination, and (2) that the affiant included the material falsity or omitted information intentionally or with a reckless disregard for the truth." *Id*. (citations omitted). "The role of a judge considering a defendant's motion for a *Franks* hearing is to remove any overt falsehood from the affidavit—or else incorporate any omitted material facts that undermine probable cause, if an omission is what rendered the affidavit misleading—and see if probable cause remains." *United States v. Daniels*, 906 F.3d 673, 676 (7th Cir. 2018) (citing *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006)).

DISCUSSION

## I.   Motion for a *Franks* Hearing—Regarding Detective Dukes's Affidavit

According to Brown, "the affiant Blake Dukes knowingly and intentionally omitted information in the affidavit provided to the magistrate judge in determining probable cause." (Doc. 81, p. 1). "More specifically, Blake Dukes failed to include or establish sufficient information related to the confidential informant's reliability, credibility and veracity in the search warrant affidavit provided in support with the application for search warrant." (*Id*.). Brown argues that the affiant failed to disclose that

CS 17-405 was paid and had over 20 convictions. (*Id*. at p. 2). Brown also argues that the affiant "knowingly and intentionally" omitted information regarding "illegal eavesdropping and or surveillance" when presenting the probable cause affidavit. (*Id*.). Finally, Brown attacks the lab and field tests for the May and June drug buys and whether CS 17-405 requested heroin.

### A. Materiality

"Where an affidavit is based primarily on tips from an informant, probable cause can be shown based on the totality of the circumstances." *Clark*, 935 F.3d at 564 (citations omitted); *see also Glover*, 755 F.3d at 816 ("[f]or cases where the affidavit is based on an informant's report, *Gates* adopted the 'totality-of-the-circumstances analysis that traditionally has informed probable cause determinations.'"). "For evaluating the totality of the circumstances in informant cases, [the Seventh Circuit's] decisions have developed five primary factors that [it] consider[s] along with other pertinent concerns: the level of detail, the extent of firsthand observation, the degree of corroboration, the time between the events reported and the warrant application, and whether the informant appeared or testified before the magistrate." *Glover*, 755 F.3d at 816 (citing *United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011)). "Information omitted from a warrant application is *material* when its omission affects the probable cause determination." *Clark*, 935 F.3d at 564 (citing *Glover*, 755 F.3d at 820) (emphasis added).

#### i. United States v. Woodfork, 999 F.3d 511 (7th Cir. 2021)

The Government does not address the five factors above to assess whether Dukes's omissions were material to the probable cause determination. Instead, the Government

emphasizes the difference between an informant providing a tip and an informant engaging in a controlled buy. The Government argues that "[w]hen one or more controlled buys establish the basis of the search warrant affidavit, the cooperating source's criminal history loses importance." (Doc. 92, p. 6). The Government cites to *Woodfork* in support of this notion. While the Court in *Woodfork* did not address the primary factors, the facts in *Woodfork* alleviated the need to assess the informants' credibility.

In *Woodfork*, an officer sought a warrant from a county judge to search the defendant's home. *Id*. at 514. The officer "did not submit an affidavit in support of the search warrant request; instead, he testified under oath, live before the judge." *Id*. During the officer's *recorded testimony*, he identified the defendant "as the target of the requested search warrant." *Id*. The officer's testimony also included the following:

(1) the defendant had sold methamphetamine in a controlled buy to a confidential source that day;

(2) before the transaction, officers searched the confidential source for currency and contraband and provided the source with $110 of official advanced funds to buy the methamphetamine from defendant;

(3) officers surveilled the first controlled buy;

(4) the confidential source wore a wire that recorded the transaction;

(5) after the transaction, officers searched the confidential source;

(6) the officer had relied on the confidential source "multiple times" in the past and that the source was "reliable";

(7) officers intended to set up a second controlled buy on the day of the hearing;

(8)    for this second controlled buy, a second confidential source contacted defendant to buy methamphetamine;

(9)    the second confidential source attempted to set up the controlled buy away from defendant's home;

(10)   this second controlled buy was "stymied";

(11)   the officer testified that he had "done" three "past buys" from defendant within the last year using the same confidential informants; and

(12)   these three "past buys" were also "wired buys."

*Id.* at 514-15. From this testimony, the county judge issued a search warrant for the defendant's home. *Id.* at 515. The officers executed the warrant and discovered methamphetamine and a firearm. *Id.* This evidence was presented to a federal grand jury, and the defendant was indicted for possession of a controlled substance with intent to distribute and possession of a firearm by a felon. *Id.*

The defendant "moved to quash the search warrant and in the alternative to suppress the evidence discovered through the warrant-authorized search of his home." *Id.* According to the defendant, "he was entitled to a *Franks* hearing and suppression of the evidence from the search because he claimed that [the officer] had misled the warrant-issuing judge regarding the identification of his home as the place to be searched and by omitting details about the confidential sources' criminal histories." *Id.* The district court in *Woodfork* denied the defendant a *Franks* hearing finding that "the omission of information about the sources' backgrounds, criminal histories, or motives does not change the probable cause determination." *Id.* The court also held "that regardless of probable cause, the good-faith exception announced in *United States v. Leon* would

apply." *Id.*

On appeal, the defendant argued that the district court should have held a *Franks* hearing to investigate the accuracy of the officer's testimony in support of the search warrant. *Id.* The defendant contended that the officer "recklessly or intentionally omitted the confidential sources' criminal histories and other details about their credibility." *Id.* The defendant also asserted that the officer "invented" the street corner where the second controlled buy was supposed to take place.

Although the officer used a confidential source,[2] the Court did not directly address the five primary factors it previously developed to evaluate the totality of the circumstances in confidential informant cases. For instance, rather than evaluating the factor concerning the extent to which the informant's information was based on firsthand observation, the Court acknowledged the significance of the officer's direct knowledge of the controlled buys. *Id.* at 517. The Court also addressed the degree to which police corroborated the informant's information by noting that the officer and the issuing judge "were not simply relying on the *uncorroborated* word of the confidential sources; law enforcement officers arranged and witnessed the controlled-buy transactions through the wire recordings and surveillance." *Id.* (emphasis added).

The *Woodfork* Court touched on the time between the events reported and the

---

[2] The undersigned recognizes a possible difference between the terms "confidential source" and "confidential informant." *See e.g., Com. v. Marsh*, 997 A.2d 318, 320 (Pa. 2010) (noting that "[t]he record reveals that the officers in this matter referred to the confidential informant as a confidential 'source,' explaining that the difference between a confidential source and a confidential informant is that an informant is paid for information while a source is not"). However, the Government has not identified whether the difference impacts the analysis.

warrant application when it summarized the officer's recorded testimony and included details about the timing of the controlled buys with respect to the warrant request. *Id*. at 514. Finally, the Court in *Woodford* did not need to address the final factor—whether the informant appeared or testified before the judge—because the officer appeared in person to testify before the county judge. *See id*. at 517 ("[u]nlike the consideration of a written affidavit, the judge had the ability to ask [the officer] questions regarding the confidential sources' backgrounds and criminal histories"). The Court noted, "[g]iven [the officer's] live testimony, the judge could have probed this issue further had he thought it necessary." *See id*. (recognizing the district court's point that "[if the issuing judge] had thought the confidential sources' criminal history or motivations were relevant to his determination of probable cause, he could have asked [the officer] to explain").

The Court found that the "omission of information about the sources' backgrounds, criminal histories, or motives does not change the probable cause determination." *Id*. at 517 (citations omitted). Specifically, the Court distinguished the facts in *Woodfork* "from cases in which probable cause depended on the credibility of the source of a single confidential or anonymous tip." *Id*. The Court also acknowledged the officer had direct knowledge of the controlled buys:

> Importantly, [the officer] (and the issuing judge) were not simply relying on the uncorroborated word of the confidential sources; law enforcement officers arranged and witnessed the controlled-buy transactions through the wire recordings and surveillance. Indeed, "[w]e have held that 'a controlled buy, when executed properly,' is generally 'a reliable indicator as to the presence of illegal drug activity.'" *Bacon*, 991 F.3d at 837 (quoting *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006)). Here, [the officer] had *direct knowledge of the controlled buys*.

*Id.* (emphasis added).

Brown's situation is distinguishable. Indeed, the differences between *Woodfork* and the situation here illustrate why the undersigned must still consider the five primary factors to evaluate the totality of the circumstances—and whether the omitted information from Dukes's affidavit was material to the probable cause determination. First, unlike the officer's recorded testimony in *Woodfork*, which included details like (1) the confidential informant's use of a wire to record the controlled buys; (2) the officers' actions before the controlled buys; and (3) the officers' actions after the controlled buys, Dukes's affidavit lacked this level of detail and included only minor details on what information CS 17-405 provided. Second, unlike the officer's recorded testimony revealing the officer's direct knowledge of the controlled buys in *Woodfork*, Dukes's affidavit fails to show the extent of his direct knowledge. The officer's direct knowledge of the controlled buys in *Woodfork* alleviated the need to assess the informant's credibility. Here, Dukes was involved in the controlled buy on May 13, 2021, but not the controlled by on May 20, 2021, and it is unclear whether Dukes was involved in the controlled buy on May 27, 2021. (Doc. 91-1).

Third, unlike the officer's recorded testimony in *Woodfork*, where the officer testified about law enforcement officers witnessing the controlled-buy transactions through the wire recordings and surveillance (thus alleviating the need for police to corroborate the informant's information), Dukes's affidavit does not reveal that he witnessed the controlled buys through wire recordings or surveillance. Fourth, unlike the officer appearing in person to testify before the issuing judge in *Woodfork*, it is unclear

whether the issuing judge had the ability to ask Detective Dukes about the confidential source's background and criminal history. Thus, the factor regarding an informant appearing or testifying before a judge cannot be ignored. *See Glover*, 755 F.3d at 817 (noting that "Doe's appearance before the judge bolstered the reliability of the affidavit, but only slightly [because] [w]ithout any record we must assume that Doe did not testify").

As shown above, the Government's reliance on *Woodfork* is misplaced. The Court must still consider the primary factors to determine whether the complete omission of information regarding CS 17-405's credibility was material to the probable cause determination.

### ii.   *The Level of Detail CS 17-405 Provided*

Dukes's affidavit does not reveal that CS 17-405 provided detailed information. According to the affidavit, CS 17-405 provided the following: (1) the secretive manner in which CS 17-405 asked Brown if he had more heroin that CS 17-405 could come buy; and (2) that the substance obtained at the June 10, 2021 controlled buy could possibly be fentanyl. This level of detail is not enough to find that the foundation for probable cause independent of CS 17-405's credibility was so great that CS-17-405's credibility was immaterial for *Franks* purposes.[3]

---

[3] The Seventh Circuit has "found probable cause *despite limited detail* where the affidavit showed that the informant had provided reliable information before, which also suggested the report was not motivated by animus against the defendant." *Glover*, 755 F.3d at 817 (emphasis added) (citing *United States v. Searcy*, 664 F.3d 1119, 1123 (7th Cir. 2011)). Dukes's affidavit does not show that CS 17-405 previously provided reliable information.

iii.    *The Extent to which the CS 17-405's Information was Based on First-Hand Observations*

The fact that CS 17-405's information is firsthand is not enough to find that the foundation for probable cause independent of CS 17-405's credibility was so great that omission of CS 17-405's criminal history was immaterial. *See e.g., United States v. Bradford*, 905 F.3d 497, 504 (7th Cir. 2018) (although informant's information was firsthand the Seventh Circuit did not end its analysis, but noted that the information was also "quite detailed and corroborated"); *United States v. Musgraves*, 831 F.3d 454, 460 (7th Cir. 2016) (finding that the officer's affidavit did not provide probable cause for the search warrant when he omitted the informant's name and details of his extensive criminal history—and the informant's firsthand information did not "resuscitate[] the [informant's] information"); *Clark*, 935 F.3d at 565 (acknowledging that "when police have *sufficiently corroborated* an informant's tip, the omission of facts pertaining to the informant's credibility may not be material") (emphasis added).[4]

iv.    *The Degree to which Police Corroborated CS 17-405's Information*

If CS 17-405's information was both quite detailed and adequately corroborated, then the omission of damaging facts about CS 17-405's credibility may be immaterial. But the Government has not provided details of law enforcement's corroboration. In *Bradford*,

---

[4] Similarly, the fact that little time elapsed between the events reported and the warrant application is not enough to find that the foundation for probable cause independent of CS 17-405's credibility was so great that Dukes's omission was immaterial. *See Glover*, 755 F.3d at 817-18 (although the informant's information included the types of guns, "and [reported that] the guns had been seen firsthand and recently[,]" the Court held that "the omissions from the affidavit deprived the magistrate of highly relevant information that tends to undermine Doe's credibility and thus the probable cause determination").

905 F.3d at 504, the informant's "information was fresh, firsthand, quite detailed, and corroborated, all of which supports the magistrate's finding of probable cause." In fact, the Seventh Circuit provided the following examples to show how the informant's information was sufficiently detailed and adequately corroborated:

> His descriptions of the firearms [defendant] kept in his home were quite specific as to gun type, and he also identified their precise location within the home. [Defendant's girlfriend] provided corroboration; the information agents had gathered from her confirmed that [defendant] kept multiple firearms in his home. And the Draco pistol she turned over to the ATF matched the serial-number tag recovered in the earlier search of [defendant's] home. [The informant] also reported that [defendant] sometimes kept his firearms in his white Cadillac, and the ATF confirmed that [defendant] owned one. Finally, the warrant application chronicled the controlled buys, which confirmed [the informant's] reports that [defendant] was dealing crack and marijuana from his home.

*Id*. at 504.

Not only is the degree of corroboration here not like the degree of corroboration in *Bradford*, but Dukes's affidavit does not reveal that he witnessed the controlled buys through wire recordings or surveillance to alleviate the need for corroboration like in *Woodfork*. This is also not a situation where a "second affidavit included information from a second informant without credibility problems who had provided the police with specific and timely information about the suspect's drug trafficking to support the warrant." *Clark*, 935 F.3d at 565 (citing *Musgraves*, 831 F.3d at 460).

      *v.*    *CS 17-405 Failed to Appear or Testify Before the Issuing Judge*

If the issuing judge is able to question the informant, then the omission of damaging facts about the informant's credibility may be immaterial. In *United States v. Sanford*, 35 F.4th 595, 600 (7th Cir. 2022), the Court held that "the failure to affirmatively

reveal [the confidential informant's] criminal history did not impact the ability of the magistrate to fulfill that role and is insufficient to require a *Franks* hearing." The Court noted that while there was "only some verification of details by the officer, and in that way lacks the corroboration presented by the controlled buys in *Woodfork*, here the issuing judge was presented with testimony from the confidential informant, [ ] , herself." *Id*. Thus, "the issuing judge did not have to depend upon a written affidavit or even testimony from an officer." *Id*. The Court acknowledged the judge's opportunity to question the confidential informant "as to any issues of importance to the judge in making the credibility determination and in deciding whether probable cause was established." *Id*. Here, it is unclear whether CS 17-405 appeared before the issuing judge on June 10, 2021.

      *vi.*    *Review of the Primary Factors*

Besides not including CS 17-405's credibility information, Dukes's affidavit provides little detail on the information CS 17-405 provided and whether CS 17-405's information was firsthand because CS 17-405 was involved in the controlled buys. The affidavit also provides little information on the degree to which police have corroborated CS 17-405's information and the amount of time elapsed between the events reported and the warrant application. And, again, it is unclear whether CS 17-405 appeared or testified before the issuing judge. "In sum, the foundation for probable cause independent of the credibility of the informant [is] so meager in this case that the credibility of the informant was material for *Franks* purposes." *Clark*, 935 F.3d at 566. Even if Dukes's affidavit presented a close question as to probable cause, the credibility information of CS 17-405

is material to the issuing judge's decision. *See Glover*, 755 F.3d at 818 (acknowledging that "[w]hen an affidavit presents a close question as to probable cause under the primary factor analysis, *cf. Dismuke*, 593 F.3d at 587, any available credibility information is likely to be material to the magistrate's decision").

### B.  *Deliberate or Reckless Omissions?*

"[C]redibility omissions do not require courts to infer recklessness." *Clark*, 935 F.3d at 566. But certainly, "[i]n this case, the questions of materiality and the police affiant's state of mind are intertwined." *Id*. In *Clark*, the Court pointed out that "[t]he reliability of the corroboration all depended, from the issuing judge's point of view, on the same officer whose credibility is at issue . . . ." *Id*. That officer "omitted all adverse information he had about the credibility of the informant . . . ." *Id*.

On these facts, the Court in *Clark* held that "[t]he complete omission of the available damaging information about the informant's credibility permits an inference that [the officer] was not being honest and careful with the issuing court." *Id*. at 567. The Court noted that "[w]hether he in fact was honest and careful about the facts is an appropriate subject for the *Franks* hearing on remand." *Id*.

Here, Dukes omitted adverse information about the credibility of CS 17-405 and other details of the controlled buys. The Court finds that these omissions call for a *Franks* hearing.

### C.  *Good Faith Exception*

The Government argues that "[e]ven if the search warrant did violate the Fourth Amendment (which it did not), because agents were acting in *good faith*, suppression is

an inappropriate remedy." (Doc. 92, p. 9). The Government then points out that Brown

failed to meet his burden under *United States v. Leon*, 468 U.S. 897 (1984). (Doc. 92, p. 10).[5]

But here Brown is only seeking a *Franks* hearing. Brown does not need to meet the

Government's proposed burden under *Leon* to obtain a *Franks* hearing. In *Glover*, "[t]he

government argue[d] that the good faith exception should apply [ ] based on *United States*

*v. Taylor*, 471 F.3d 832 (7th Cir. 2006), and *United States v. Williams*, 718 F.3d 644 (7th Cir.

2013)." 755 F.3d at 821. The Seventh Circuit distinguished those cases, however, by

noting:

> In *Taylor*, the attesting officer described the informant as a "concerned
> citizen" and referred to his assistance in past investigations, but the officer
> omitted the informant's criminal background and receipt of cash payments.
> 471 F.3d at 840. The district court found that the officer did not intend to
> mislead the issuing judge, and we affirmed. *Id*. at 836, 840. In *Williams*, we
> affirmed a finding that a police officer did not recklessly deceive the
> warrant-issuing judge when he described the informant's recent criminal
> activity but did not mention that he was under arrest when he provided the
> information. 718 F.3d at 653.
>
> We agree that Officer Brown's omission of information about Doe's
> credibility was similar to the omissions of information in both *Taylor* and
> *Williams*. But both cases are readily distinguishable from Glover's case
> because the findings in both cases were made *after* the *Franks* hearings,
> which were needed because the defendants came forward with evidence
> sufficient to permit an inference of deliberate or reckless omission. *See*
> *Williams*, 718 F.3d at 653; *Taylor*, 471 F.3d at 836. The findings in those cases
> received deference because the district courts properly held the required
> *Franks* hearings.

---

[5] In *United States v. Leon*, 468 U.S. 897, 922–23, (1984), the Supreme Court "identified four situations in which
the good faith exception does not apply: [(1)] when the affiant misleads the magistrate with a reckless or
knowing disregard for the truth, [(2)] when the magistrate wholly abandons the judicial role, [(3)] when
the affidavit is 'bare bones' or 'so lacking in indicia of probable cause' that reliance is unreasonable, and
[(4)] when the warrant is facially deficient in that it fails to specify the place to search or the items to seize."
*Glover*, 755 F.3d at 818–19.

*Id.*

Simply put, the Court cannot determine whether the good faith exception should apply until *after* the *Franks* hearing.

## II.   Motion for a *Franks* Hearing – Regarding Detective Decker's Affidavit

Detective Decker's affidavit includes all of the same information as Detective Dukes's, but it also incorrectly asserts that "it is believed that Brown has prior felony convictions out of the state of Missouri, so that he is a convicted felon." (Doc. 82-2, p. 2). Brown argues that "the affiant Detective Decker knowingly, intentionally, and with reckless disregard for the truth included false statements in the affidavit provided to the magistrate judge in determining probable cause." (Doc. 82, p. 1). "More specifically[,] the affiant Decker specified in paragraph (c) sentence 16 that the Defendant Duan Brown is a convicted felon." (*Id.*).

### A. Materiality

The Government acknowledges that Brown is not a convicted felon. The Government argues, however, that "[e]ven if Detective Decker informed the reviewing judge that Brown was a convicted felon intentionally or with reckless disregard for the truth, before suppression occurs, this Court must make an independent determination of whether the remaining content is sufficient to establish probable cause." (Doc. 93, p. 5). Specifically, the Government states:

> Here, law enforcement presented evidence that Brown lived or was temporarily domiciled at an Illinois residence. Mr. Brown did not possess a FOID card. Thus, sufficient facts exist establishing probable cause for the issuing magistrate to find Mr. Brown violated Illinois law.

(*Id*.).

The problem is that "[p]robable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). Here, the suspected crime was possessing a firearm without a FOID card. A reasonably prudent person would believe that a search of 875 Martin Luther King Drive would uncover evidence of this crime if there was sufficient evidence that Brown was a felon, because felons are ineligible for a FOID card. *See* Illinois State Police – Firearms Services Bureau, https://www.ispfsb.com/Public/Faq.aspx (last visited Oct. 17, 2022). Without the assertion, it would have been unreasonable to believe that a search would uncover evidence of violating Illinois's FOID card requirement because there are numerous exceptions to the FOID card requirement. *See e.g.* 430 Ill. Comp. Stat. 65/2 ("[t]he provisions of this Section regarding the possession of firearms, firearm ammunition, stun guns, and tasers *do not apply to . . .* [n]onresidents who are currently licensed or registered to possess a firearm in their resident state"). Accordingly, this misstatement is material.

    *B. Deliberate or Reckless Omissions?*

Decker also omitted additional information, i.e., whether he was involved in the other controlled buys. *See Clark*, 935 F.3d at 567 (holding that "[t]he complete omission of the available damaging information about the informant's credibility permits an inference that [the officer] was not being honest and careful with the issuing court"). Thus, whether Decker was honest and careful about the facts is an appropriate subject for

a *Franks* hearing.

        C. *Good Faith Exception*

Again, the Government argues that the good-faith exception applies. To be clear, "the Court cannot address that argument until after the *Franks* hearing is held and the Court determines whether a *Franks* violation has occurred." *United States v. Hueston*, 2021 WL 5231734, at *4 (N.D. Ind. Nov. 10, 2021). Indeed, "[t]he *Leon* good faith exception does not apply when there is a *Franks* violation." *Id*. (citations omitted).

## CONCLUSION

For these reasons, Defendant Duan M. Brown's Motions for *Franks* Hearings (Docs. 81, 82) are **GRANTED**. The Court will set a status hearing by separate notice. At the status hearing, the parties should be prepared to discuss their availability for a *Franks* Hearing, individuals to testify (including Detective Dukes, Detective Decker, Lieutenant Jamie James, Detective Shawn Richards, and/or CS 17-405), and other procedural issues.[6] Brown's Motion to Dismiss (Doc. 77) and Motion in Limine (Doc. 78) will remain under advisement.

        IT IS SO ORDERED.

        DATED:  October 19, 2022

                                        **NANCY J. ROSENSTENGEL**
                                        **Chief U.S. District Judge**

---

[6] For instance, the parties should be prepared to discuss whether the Government must disclose statements pursuant to Federal Rule of Criminal Procedure 26.2 before the *Franks* hearing. If Dukes disputes that he knew (as of the time of the search warrant's filing) any of CS 17-405's credibility related information, then that should be identified (and disclosed) as early as possible so that Brown can possibly pursue discovery on that issue. Pursuant to 18 U.S.C. 3161(h), time is excluded under the Speedy Trial Act to serve the ends of justice from October 19, 2022, until the date of the *Franks* hearings. This excludable period is necessary to resolve the pending motions.